The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Our first case for today is 20-1160 M & K Holdings v. Samsung. Mr. Bauer, please proceed. Good morning, Your Honors. This is John Bauer for M & K Holdings. In this case, we believe that the Board erred in a couple of fundamental respects and that they came to findings of fact that were not supported by substantial evidence. We did that in our brief and we will outline that in our argument today. Basically, there are three issues. Whether or not storing references called Park and Zao on the JCTVC website rendered those publicly accessible, that's one issue. The second issue is whether during a quarterly meeting of the JCTVC, the presentations concerning the subject matter of Park and Zao also rendered them publicly accessible. The third issue, time permitting, is whether or not the grounds for rejecting Claim 3 were valid. We believe they were not and violated the APA by providing M & K notice. With respect to the first issue of the printed publication, I thought... Mr. Bauer, before you get into the printed publication issue, could I ask you just a real quick question about the third issue? That is the question of whether the Board departed from the theory presented in the petition. The Board construed, as I read the opinion, the Board construed Claim 3 to allow it to be approved either by Alternative 1 of Limitation 1J along with the added element of Claim 2 or Alternative 2 of Limitation 1J with the added element in Claim 3. Do you take issue with that claim construction or do you think it is correct? What M & K takes issue with is that SAMSUNG chose to reject... I understand that, but I'm asking, do you agree with that claim construction as a starting point? Yes. Okay. And you think that Claim 3 is a proper dependent claim given that claim construction? Well, what we believe is that the claim construction provided by SAMSUNG should control... I'm asking a predicate question of trying to see whether we're starting at the same point on the claim, whether you agree with the claim construction given by the Board. And the second question is, do you think this is an unusual form of dependent claim? Do you think it's an appropriate, proper form of dependent claim? I think the form of the claim is a single embodiment, which requires that claim to be construed to cover that embodiment, and that's what SAMSUNG did when it drafted the petition. It basically said that with respect to Claim 3, we need to add the Park and Zhou references to render that claim limitation obvious because the primary reference, WD4V3, did not in fact anticipate for that claim. Okay. Thank you. Go ahead. Sure. So if we go back to whether or not the Park and Zhou are considered printed publications, they were stored on the JCTVC website. And basically what the JCTVC is, it's a joint collaborative team on video coding, and it was established in 2010 by the combined VCAG and MPAG to establish the New Generation Video Coding Standard. And they gave the name High Efficiency Video Coding, HEVC, as the project name. And in January of 2010, there was a call for proposal, and the first quarterly meeting took place in April 2010, which proposals were considered. The function of these quarterly meetings was to develop the HEVC standard, and the document that embodied the current status and development of the HEVC standard was referred to as a working draft. And to develop the New Generation HEVC standard, or the working draft, documents that had been uploaded to the JCTVC and then mirrored to the MPAG were stored there for the purpose of being presented at a quarterly meeting. But because the quarterly meetings went through hundreds of documents and at least spanned approximately a week, the meeting minutes expressly stated that what would actually be presented was not the input document itself, but a slide, two slides, and a limitation of approximately five minutes. And that's shown at A3448 and 3698. But the documents were, in fact, these documents were uploaded to the JCTVC website. And because they were uploaded and ultimately considered for consideration to the HEVC standard, they were labeled input documents. But after each quarterly meeting- I'm going to interrupt you for just a second. Now, with respect to the presentations that were made, I guess I have two questions. First is, is there any evidence as to whether the written documents were available at the time that the presentation was made and-well, go ahead. You can answer that question. So if we move to presentations, they were-there's no evidence in the record of the actual documentation that was presented for either AHRQ or ZAL. All we have is a subsequently issued meeting report that talks about the subject matter of what was discussed. And in the course of the presentations, was there any-is there any evidence as to whether there was an allusion to the underlying documents, as in, you know, if you want more information about this presentation that I've just made, here's the document to look for. There is no evidence in the record of what documentation was actually looked at during those presentations. Well, but-or is there anything to indicate that there was any suggestion that there's a way to obtain the more complete document than the- I would say that because the documents were actually stored on the JCTVC website, it would have been possible for the member of that meeting to access it. But what's important here is that the input document, as opposed to the working draft, were not considered important by those interested artisans. If we look at the record, all of the evidence directed to the prominence of the JCTVC, the distribution of documents related to the JCTVC, they all relate to the working draft because the working draft was the latest standard. And that's what one of ordinary skill or the interested artisans were interested in. That is shown in Mr. Bross' first declaration, and there's a separate section shown in Mr. Bross' supplemental declaration. There's no evidence in this case of an input document such as PARC or ZAO being distributed to the public at large. Not a single reference to ZAO and the only reference to PARC- Counsel, to be clear, when you say distributed, you mean no evidence except for the fact that they were available on this website, right? They were available, Your Honor, but the record-the evidence is undisputed that Samsung provided no evidence, zero, that it could be searched. The only evidence that Samsung- But they were available, and isn't there some evidence in this record? Let's start with JA3600, which is the meeting notes that show that PARC and ZAO were specifically discussed. 3600 shows PARC. 4077 shows ZAO. Isn't this evidence? I mean, we review this for substantial evidence. You've got a heavy burden to overcome, and there's evidence here that these references were specifically discussed. These are summaries of the references in the meeting notes themselves. The references themselves were available on the website, and in addition to all of that, you have attendees. Mr. Bross was one of them, and his recollection at JA4986 and 4987 also supports the idea that these references in particular were discussed. He remembers specific discussion of the PARC reference in paragraph 20 and specific discussion of the ZAO reference in paragraph 21. So when there's a meeting, and there's actually summaries of references given and discussion of those references, and then the full references are fully available on the website, why in the world isn't that substantial evidence that these references themselves were in fact publicly accessible? I direct your attention to your decision, the Federal Service decision in Samsung Electronics, the Infobridge. And one of the issues was whether or not a working draft in that case was hosted on the JCTV website, the fact that whether 250 of the JCTV members, if they had access to it, was that sufficient? And what this court found was that this website is basically an ongoing collaboration to draft an upgraded standard. Counsel, this is Judge Moore. Are you trying to suggest that the Samsung Electric case creates a rule of law with regard to what must exist for public accessibility? And the reason I ask that question is because we were reviewing the board, and the board made a decision, which is a fact question, which we reviewed for substantial evidence on public accessibility. So isn't it possible that two different decisions, even under identical facts, which these are not identical, but even under identical facts, wouldn't we have to affirm based on a substantial evidence standard of review a fact question potentially? I'm not asking for this court to consider that as a rule of law. What I am saying is that on the facts of this case, with respect to the input documents, there is no evidence that these were distributed publicly because what everyone was interested in was the working draft. And when you then overlay that lack of evidence combined with the fact that the presentations were limited to the JCTVC members, and then also combine that with the fact that there's no evidence in the record that one could search that website to obtain those input documents. It was title searchable, right? It was title searchable, but there was no evidence in the record to say that one could identify it by title search. And if I may, I'm a little bit over here. I just want to make this one point. You're using your rebuttal time. If you want to make additional points, it's at your own expense. Okay. Samsung put forth evidence that one could search for a working draft. They put no evidence in that one would be motivated to or could search for an input document. The fact that Samsung did not put that evidence in for an input document is proof that Samsung did not believe that those documents could be identified by using a title search. If Samsung had thought so, they would have put it in, and they were required to, and it was their burden of proof. So the finding that these documents could be identified by a title search by exercising reasonable diligence, there's nothing in the record to support that. In fact, the evidence is contrary to that. Otherwise, Samsung would have put it in because it knew, based on the evidence that it put in for identifying a working draft, that such evidence was needed. That's all for now. Okay. Let's hear from – how do I say your name, counsel? It's Timofiev, Your Honor. Timofiev? Yes. Okay. Mr. Timofiev, please proceed. Thank you, Your Honor, and may it please the Court. This is a substantial evidence appeal. The Board here applied the proper legal standards, and MNK itself does not dispute the Board's finding that the working draft was publicly accessible. Its appeal is confined to two documents, as the counsel mentioned, to Park and Chow. The Board's finding that these references were publicly accessible is amply supported by substantial evidence, and there are three key Board findings that support that. Mr. Timofiev, before you get – this is Judge Bryson – before you get into your argument on the main point, I ask you the same question I asked your opposing counsel. Do you concur with the Board's construction of Claim 3? And I went through the construction with your opposing counsel, so you know what I'm talking about. Your Honor, we do think that the Board was correct in its construction of Claim 3. In our petition, we proceeded on the basis that Claim 3 was obvious for a combination of three references, WD4, Park, and Chow, and there we relied on the second element of the claim. You relied on the theory that Claim 3 was predicated, at least for purposes of your argument, on Alternative 2 of 1J. The Board said, well, but it's also predicated on Alternative 1 of 1J, and you agree with that? Your Honor, we do agree with that. The reason we proceeded on the – I'm sorry, you say you don't agree with that construction? No, I'm sorry, Your Honor, we do agree. Right, okay. All right, go ahead. We agree with the Board's construction. We proceeded on the obviousness theory predicated on the second element of Claim 1J because there is no question in our view that Claim 3 is obvious based on the combination of those three references. But we think that this Court can affirm on the basis of the Board's – and I want to be clear, we don't think it's a claim construction. It's really an application of a plain claim language. It's just that the claim presents two different alternatives. There was no claim construction, as the Board actually self-observed. Right, but there's at least an implicit claim construction. One could draw from the Board's construction that Claim 3 can be satisfied either by Alternative 1 or Alternative 2. One could be led by the way you argued the case to suggest that perhaps Claim 3 was limited to Alternative 2 since you didn't present the argument, which was the one that the Board found to be more straightforward, that Alternative 1 was available as well. That is correct, Your Honor. But we think here this Court can affirm on the basis of the Board's application of Claim Element 1J. And that raises the question, however, that whether the Board's departure from the theory and the petition is a departure that is not permitted under our case law with regard to the Board's freedom to decide cases on theories other than the ones presented in the petition. Why doesn't this case fall into that category? Your Honor, we believe that this case here is, even if there was any error, it's a harmless error. Because the Board, as Your Honor observed, the Board found an easier way to determine that Claim 3 is unpatentable. And it found anticipation by WD-IV. And then it observed that because anticipation is the epitome of obviousness, Claim 3 would also be obvious under the combination of three references. Mr. Tomafiev, this is Judge Chen. Your answer to Judge Bryson's question seems to be that the Board happened to find an easier route to rendering the claims unpatentable than the theory that you presented in your petition. And do you have another explanation? Because that explanation alone doesn't seem to answer the core concern about a due process defect in the Board electing to employ a theory that it was never presented by the petition or at any point during the trial. Judge Chen, we think that there is no due process problem here because the Board relied on all the evidence on which the Board relied in its analysis was disclosed without petition. We also discussed all the relevant claim limitations. And I think what is key here is M&K never presented any argument to contest the unpatentability with respect to any of the claim limitations. The only challenge it presented was based on the printed publication status of WD-IV, Park, and Chau. So we think here there is no... Is it your intention that the claim is unpatentable, or is it still your burden of proof to convince the patent Board that the claims are unpatentable despite the fact that the patent owner did not elect to put on any kind of substantive rebuttal argument? It is certainly our burden of proof. We think we satisfied it by presentation of the evidence in the argument in our petition. We think that here the score can certainly remand and direct the Board to analyze Claim 3 under the obviousness ground that we present in the petition. We think given that M&K did not present any challenge to unpatentability arguments, a remand would just be futile. Joanne, if there are no other questions on Claim 3, I'd like to make a few key points on the printed publication. That's fine, Counsel. But before you do, let me just ask. I'm sure you listened to my discussion with opposing counsel. Let me just summarize what I see in this record. I see two declarations from Mr. Bross and Mr. Vetro that collectively evidence Park's claim The reference was on the website. The reference was discussed at meetings, as the meeting notes themselves demonstrate. And Mr. Bross and Mr. Vetro confirm how the site is structured, how important BCTVC was to the community in general, and how the meetings were run. I've got to be honest. I'm hard-pressed to imagine why that's not substantial evidence of public accessibility. And I understand their argument to be in part that Samsung Electric came out differently. Well, we were reviewing for substantial evidence of a different set of facts on public accessibility there. So, I mean, I've made your argument for you. Did I miss anything? No, Joanne. I think you summarized the key points. I would just add the, and I think, Joanne, actually earlier referred to the meeting reports. So this is Appendix 3600 and 4077, which demonstrate the discussion of both Park and Chau during the meetings. And I would say that the key, there were two key findings by the board. One is the finding that these references were available prior to the meeting and during the meeting, and that attendees at the meetings necessarily consulted them and accessed them and reviewed them in order to make the decisions that actually reflected in the meeting reports, which were to incorporate proposals from those two references. Well, counsel, counsel, counsel, let me correct you on the facts. You said they were available before the meeting and during the meeting. They're still up. They were available after the meeting as well, weren't they? Or did you say they were perpetually available? Joanne, they remain available, and that was one, and that was one of the goals of the JCTVC website because the JCTVC sought to publicize its work, and so those references can still be accessed today. So I would say that the key findings is on pages Appendix 53 to 56 with respect to the access during the meetings. And then the other key finding is that skilled artisans were motivated to access the JCTVC and actually could find these documents, park and job pool, reasonable searches using common sense terms, and that would be on Appendix 60 and 61. I would only add, and this is the last point, that we also presented evidence in the form of PTO applications and an article, and the PTO applications referred to the JCTVC input documents,  referred to one of the versions of PARC. And the authors of those applications included some individuals who were not attending the JCTVC meetings. So that further demonstrates public accessibility. I can also walk through our reasons why this case is very different from InfoBridge, but as Joanne emphasized, this court reviews for substantial evidence on a case-by-case basis, and we think the records here, as the board repeatedly observed, is just much more robust than in InfoBridge. Mr. Tomov, you've referred to the specific evidence regarding the availability of the papers that were ultimately published and remain on the website. Can you help us with respect to the specificity of what was, how were those papers presented to the members of the conference? Were they alluded to during the presentations? Is there any evidence that, for example, that somebody said, well, here's my five-minute spiel and here are my two slides. If you want more information, here's the paper and here's where to find it. Anything like that, or do we simply have the fact that the papers were uploaded? Joanne, there was evidence, and this was in the terms of the reference for the JCTBC, that there was a policy that all the input proposals would be deposited on the website. They had to be submitted at least a few days before the meeting, and they had to be consulted by the meeting participants to make decisions. There was also testimony by Mr. Bross that he himself recalls discussing, specifically Parkinjobitals, the other input documents which contain proposals, in order to make decisions. So the evidence is that the very purpose of the website was to make all the proposals submitted to the meetings available to the meeting attendees so that then they could make decisions whether or not to incorporate particular aspects of those proposals into the HEV standard that they were developing. Mr. Timofeyev, this is Judge Chen. Just following up on Judge Bryson's question, when you look at those meeting notes that summarize what was discussed or critiqued or recommended for further study as to Parkinjobitals, is the inference there that the fact that there were attendees that were making certain kinds of recommendations about these references, that attendees somehow had already some fairly deep understanding of those references in order to be prepared to share those kinds of thoughts during the meeting and then have those thoughts recorded in those meeting notes? Yes, Your Honor. And the Board made specific findings on this point. This is on pages 54 and 55 of the appendix because the Board found that the contraries had discussed the documents in a sufficient manner to indicate that they were accessible to them. And the Board also found that they necessarily, I quote, they necessarily must have been aware of the documents and their contents and accessed them at some point prior to the discussion to prepare for the discussion. And the Board emphasized that the attendees had to make, quote, intricate decisions about the documents. And so that necessarily, together with the other evidence, led the Board to a factual conclusion that the meeting attendees had to review those documents in sufficient detail. And just to emphasize that there was no, there was also no expectation of confidentiality. There was no restriction on forward dissemination by the attendees of a JCTVC meeting. In fact, quite the opposite. There was evidence that the policy of JCTVC was to make all of its work available and there was evidence based on the testimony of Mr. Bross and Dr. Vetra that the members of the JCTVC were often approached with inquiries about its work and about the documents that led to the developing JCTVC standards. If there are no other questions, I can rest on our papers. Thank you, counsel. Mr. Bauer, you have some rebuttal time. How much rebuttal time does he have left, Joseph? Mr. Bauer has about one minute. Okay, go ahead, Mr. Bauer. The evidence, we simply don't know what was the documentation presented at those presentations. The record also shows that PARC was not even submitted prior to those presentations. In terms of the policy of making things available or documents available on the website, that may have been the case, but that's not sufficient. They must be able to be accessed by exercising reasonable diligence, and there's nothing in the record to show that one could do that. The evidence was contrary. So in terms of the policy to make public and these supposed discussions about these documents, the actual inquiries that opposing counsel refers to as shown by the record and in Mr. Bross' supplemental declaration were directed exclusively to what the status of working draft was so that when you contrast the working draft with input documents, what you find is that while the input documents were on the site, they were not searchable and they couldn't be identifiable. And then with respect to the presentation, we simply don't know what was presented, and it was certainly a fleeting representation given the hundreds of input documents that were presented during that week, and that is quite different from the case law, which deals with a single presentation over days or something that's posted like Klopfenstein over days, whereas here you have hundreds of input documents being gone through, and there's simply not evidence to support that these input documents were publicly accessible. Thank you, counsel. We have your argument. This case is taken under submission.